IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-90129 |
| | § | |
| ALTERA INFRASTRUCTURE | § | CHAPTER 11 |
| PROJECT SERVICES, LLC, *et al.*,[1] | § | |
| | § | (Formerly Jointly Administered |
| Debtors. | § | under Lead Case No. 22-90130) |

---

UNITED STATES TRUSTEE'S SUPPLEMENTAL BRIEF IN SUPPORT OF
HIS AMENDED AND SUPPLEMENTAL MOTION FOR (1) RELIEF FROM
JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B)(6) AND
FEDERAL RULE OF BANKRUPTCY PROCEDURE 9024 APPROVING THE
COMPENSATION APPLICATIONS OF JACKSON WALKER LLP,
(2) SANCTIONS, AND (3) RELATED RELIEF

---

[Relates to ECF No. 96]

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Altera. The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

LAW AND ARGUMENT ..........................................................................................................4

I.    The U.S. Trustee has standing to seek the requested relief, including disgorgement. .....4

    A.    The U.S. Trustee has both constitutional and statutory standing to protect the public interest and enforce the bankruptcy system. ...............................................4

    B.    The U.S. Trustee has standing to seek disgorgement. .................................................9

        1.    The U.S. Trustee's statutory standing under section 307 is broad and authorizes him to pursue this motion, including to recover attorney compensation. ........................................................................................................9

        2.    The U.S. Trustee has standing to seek sanctions for Jackson Walker's violation of its disclosure duties. .......................................................................12

        3.    Nothing precludes the U.S. Trustee from seeking relief under 11 U.S.C. § 105(a)...........................................................................................................14

        4.    The U.S. Trustee has authority under Bankruptcy Rule 2017(b) to ask this Court to review Jackson Walker's fees. ................................................16

    C.    The U.S. Trustee has standing to act alone. ...........................................................17

        1.    The U.S. Trustee's standing does not turn on whether other parties may—or may not—choose to participate. ..........................................................17

        2.    The U.S. Trustee is not pursuing an estate cause of action when he fulfills his "watchdog" role by holding wrongdoers accountable for their misconduct. .........19

    D.    Jackson Walker's standing argument does not impact the other relief sought by the U.S. Trustee............................................................................................................21

        1.    The U.S. Trustee has standing to seek other appropriate relief, as he requested in his motion...........................................................................................21

        2.    As Jackson Walker concedes, the U.S. Trustee has standing to seek vacatur of compensation orders, and consequently, it must return any unearned fees if the Court vacates that order. .............................................................23

    E.    It would be detrimental to the bankruptcy system to deny the U.S. Trustee his statutory authority to hold wrongdoers accountable................................................25

II.    The U.S. Trustee's standing is irrelevant to this Court's authority and jurisdiction to consider the motion....................................................................................................27

    A.    This Court has independent authority to review attorney compensation and a duty to do so even in the absence of an objection................................................................27

    B.    This Court also has the authority to police the conduct of attorneys who practice before it and the obligation to exercise that power here. .........................................29

C.      This Court also has collateral jurisdiction to consider matters like attorney misconduct and sanctions or to consider Rule 60(b) motions....................................30

CONCLUSION.........................................................................................................................31

CERTIFICATE OF SERVICE ...............................................................................................32

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

Per this Court's Order, Kevin M. Epstein, the United States Trustee for Regions 6 and 7 ("U.S. Trustee"), files this supplemental brief in support of the *United States Trustee's Amended and Supplemental Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief*, ECF No. 96, ("60(b) Mot.").

## PRELIMINARY STATEMENT

1.      For decades, U.S. Trustees have obtained disgorgement orders when lawyers violate their disclosure obligations.  *See infra* ¶ 38.

2.      The only orders that have ever held that U.S. Trustees lack standing to obtain that relief have been reversed.  It is fundamental that bankruptcy professionals who engage in wrongdoing must disgorge fees.  And this U.S. Trustee has standing to ensure that happens here.

3.      Jackson Walker applied for, and received, more than $23 million in compensation for cases in which it failed to disclose the intimate, household relationship between former Judge David R. Jones and its partner Elizabeth Freeman, both in cases over which Judge Jones presided and in cases in which he served as mediator.  The U.S. Trustee has moved, in the public interest, to vindicate the various provisions of the Bankruptcy Code, Bankruptcy Rules, and the Texas Disciplinary Rules of Professional Conduct that Jackson Walker violated.  An order requiring Jackson Walker to disgorge compensation will redress injury to the public interest by deterring future such abuses and ensuring that Jackson Walker does not profit from its alleged misconduct.

4.      Jackson Walker has conceded that the U.S. Trustee has standing to seek vacatur of this Court's orders approving its employment and compensation.  *See* attached Sept. 16th Tr. at

1

17:1–2.  Yet, despite settled law regarding the U.S. Trustee's standing, *see infra* section I(A), and notwithstanding its own alleged gross misconduct, Jackson Walker contends that the U.S. Trustee lacks standing to seek disgorgement.  Without considering the merits of the U.S. Trustee's sanctions request, this Court has requested additional briefing on his standing.  This brief addresses the entire scope of his standing to seek the relief requested.

5.     **First**, the U.S. Trustee has both the constitutional and statutory standing to pursue any issue under section 307, except he may not propose a chapter 11 plan.  Unlike private litigants, the government need not have a pecuniary interest in the outcome of this matter to have standing to pursue it in the public interest.

6.     As the Supreme Court explained last term, the U.S. Trustee, as an officer of the Department of Justice, is "charged with promoting the integrity of the bankruptcy system for all stakeholders."  *Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071, 2080 (2024).

7.     **Second**, the broad text of section 307 and Congress's mandate to U.S. Trustees to police bankruptcy attorneys provide standing for U.S. Trustees to pursue a return of fees.  While the statutory text leaves no room for ambiguity, this interpretation of section 307 is firmly supported by legislative history.  The U.S. Trustee may also seek relief, including sanctions, under 11 U.S.C. § 105(a).  He also has authority to pursue a return of fees from professionals under Bankruptcy Rule 2017.  Last fiscal year, the United States Trustee Program ("Program") brought 377 motions seeking disgorgement and 89 other motions based on attorney misconduct.  *See also* section I(E), *infra* (providing additional statistical data regarding formal and informal actions taken by the Program seeking the return of fees or other relief against attorneys who violated the Bankruptcy Code and Rules).  Holding that U.S. Trustees lack authority to do what they have done for decades would defy statutory language, legislative history, and common sense.

8.     **Third**, the U.S. Trustee's standing to seek disgorgement is independent of any claims that others may or may not choose to assert. There is no requirement that other parties participate in the U.S. Trustee's performance of his authority to pursue sanctions against Jackson Walker. And contrary to Jackson Walker's contention, the U.S. Trustee is vindicating the Bankruptcy Code and public interest; he is not pursuing an estate cause of action.

9.     **Fourth**, independent of his standing to seek disgorgement, the U.S. Trustee has standing to pursue other appropriate relief for Jackson Walker's alleged misconduct, such as a fine, admonishment, or other non-monetary disciplinary measures that may be available.

10.     **Fifth**, Jackson Walker's concession that the U.S. Trustee has standing to seek vacatur of the orders granting Jackson Walker's compensation should end any argument about the U.S. Trustee's standing to seek disgorgement. If the compensation order is vacated and the Court does not approve its fees, then Jackson Walker has no legal right to those fees as counsel in the case and has a professional obligation to return them. So vacatur of the compensation order alone is a complete remedy here.

11.     **Sixth**, there is no reason to strain the language of section 307 to preclude the U.S. Trustee from protecting the public interest. To the contrary, public policy considerations firmly support the continued recognition of the U.S. Trustee's statutory authority to police bankruptcy attorneys.

12.     **Seventh,** even if the U.S. Trustee didn't have standing to seek disgorgement—which he does—this is irrelevant to this Court's jurisdiction to hear his motion. This Court has its own independent authority and obligation to ferret out and rectify Jackson Walker's serious alleged misconduct. Moreover, this Court has continuing jurisdiction to consider motions for sanctions

and reconsideration, even after the case is closed; no additional invocation of federal jurisdiction requiring separate standing is necessary.

13.     "The conduct of bankruptcy proceedings not only should be right but must seem right." *Knapp v. Seligson (In re Ira Haupt & Co.)*, 361 F.2d 164, 168 (2d Cir. 1966).  Congress created the Program to fulfill this goal.  It protects the public interest by ensuring the bankruptcy system works honestly and efficiently, thereby fostering public confidence.

14.     Jackson Walker hid the truth from this Court, from its clients, from the government, and from the public.  Jackson Walker should not profit from its alleged misconduct.

## LAW AND ARGUMENT

**I.     The U.S. Trustee has standing to seek the requested relief, including disgorgement.**

   **A.     The U.S. Trustee has both constitutional and statutory standing to protect the public interest and enforce the bankruptcy system.**

15.     Jackson Walker's attack on the U.S. Trustee's standing to hold it accountable for its misdeeds is meritless.  As the Solicitor General represented to the Supreme Court last term:

> "Bankruptcy law has also long recognized that a governmental entity, as part of the 'performance of its public duties,' may participate in bankruptcy proceedings where its 'only interest . . . is a public one,' even if it lacks 'any personal, financial or pecuniary interest in the property' at issue."

Brief for the United States as Amicus Curiae Supporting Petitioner, *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 144 S. Ct. 1414 (2024) (No. 22-1079), 2023 WL 8690785, *18 (quoting *Sec. & Exch. Comm'n v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 460 (1940)).  Thus, as recognized by the Supreme Court and multiple courts of appeals, *see* ¶¶ 21–24 *infra*, the U.S. Trustee need not have a pecuniary interest to enforce the Bankruptcy Code.  And nothing precludes his ability to take actions that benefit others.

16.     To the contrary, the Supreme Court observed just last term that "[v]indicating 'the *public* interest . . . is the function of Congress and the Chief Executive.'"  *Food & Drug Admin. v.*

*All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992)) (emphasis in original).  That is because the Supreme Court has long recognized the government's right to sue in appropriate circumstances to prevent injury to the general welfare. *In re Debs*, 158 U.S. 564, 584 (1895), *abrogated on other grounds by Bloom v. Illinois*, 391 U.S. 194 (1968).  Further, "[n]o one doubts" that a sovereign "has a cognizable interest in the continued enforceability of its laws that is harmed by a judicial decision" precluding their enforcement. *Hollingsworth* v. *Perry*, 570 U.S. 693, 709–10 (2013) (citation and internal quotation marks omitted); *see, e.g.*, *United States* v. *Jicarilla Apache Nation*, 564 U.S. 162, 165 (2011) (recognizing the federal government's "sovereign interest in the execution of federal law").

17.    As the Solicitor General explained in describing the U.S. Trustee's standing: there is no Article III obstacle to congressional authorization for a federal officer or agency to "pursue the public's interest."  *See* Reply Brief for Petitioner, *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024) (No. 23-124), 2023 WL 8190850, at \*3–4 (quoting *Director v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 132–33 (1995)); *see also Ingalls Shipbuilding, Inc. v. Director*, 519 U.S. 248, 254, 264 (1997) ("Article III surely poses no bar" to an agency director's "standing" to "participat[e] in the appeal").  Rather, once Congress enacts a statute authorizing a federal officer to take action in the public interest, that officer has both Article III and statutory standing to act.

18.    Congress has made that authorization here.  Congress created the office of the U.S. Trustee and enacted section 307 to authorize him to "raise and [to] appear and be heard on any issue in any case or proceeding under" the Bankruptcy Code, subject to only one exception that is not applicable here.  11 U.S.C. § 307.  The U.S. Trustee is appointed by the Attorney General, the Executive's archetypal representative in the courts, 28 U.S.C. §§ 515–19, and acts under the

Attorney General's supervision. 28 U.S.C. §§ 581(a), 586(c). The U.S. Trustee is indisputably acting in his official capacity to represent the Executive and therefore has standing to vindicate the public interest in the proper application of the Bankruptcy Code.

19.     Legislative history amply supports the U.S. Trustee's authority to enforce the Bankruptcy Code despite a lack of pecuniary interest. Congress created the office of the U.S. Trustees because it was "[c]oncerned that" the bankruptcy court's "dual roles"—the "traditional judicial function" and managing "an array of administrative tasks"—"were overloading bankruptcy judges and creating an appearance of bias." *Siegel v. Fitzgerald*, 596 U.S. 464, 468 (2022); *see also* H.R. Rep. No. 95-595, at 90 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6051 ("[T]he combined force of all of these factors seriously compromises the appearance of the bankruptcy judge as a [sic] impartial arbiter. They have worked to generate deep suspicion on the part of attorneys who practice in the bankruptcy court as to the fairness of the decisions of the bankruptcy court.").

20.     Congress specifically intended that the U.S. Trustee would have standing despite a lack of pecuniary interest in order to be an impartial "watchdog" to ensure the integrity of the system. *See* H.R. Rep. No. 99-764 (1986) at 27, *reprinted in* 1986 U.S.C.C.A.N. 5227, 5240 ("[T]he U.S. Trustee is given the same right to be heard as a party in interest, . . . . By not designating the U.S. Trustee as a party in interest, the legislation ensures that there is no confusion over the U.S. Trustee's role in a case. A party in interest normally has a pecuniary interest in a case; the U.S. Trustee has no pecuniary stake in any case, and functions only as an impartial administrator.").

21.     Just last term, the Supreme Court again recognized the role that the U.S. Trustee plays in the bankruptcy system. *See Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071 (2024).

The majority observed that the U. S. Trustee was "charged with promoting the integrity of the bankruptcy system for all stakeholders." *Id*. at 2080.

22.     And the dissent in *Purdue* similarly described the U.S. Trustee as "a Government bankruptcy watchdog appointed to oversee bankruptcy cases." *Id*. at 2103 n.4 (Kavanaugh, J., dissenting).

23.     Both the majority and dissent in *Purdue* thus declined to entertain the challenges to the constitutional and statutory standing of the U.S. Trustee despite vigorous efforts by the respondents. *See* Brief for Debtor Respondents, *Harrington v. Purdue Pharma L. P*., 144 S. Ct. 2071 (2024) (No. 23-124), 2023 WL 7042400, at *16, 44; Brief for Respondent the Official Committee of Unsecured Creditors of Purdue Pharma L.P., *Harrington v. Purdue Pharma L.P*., 144 S. Ct. 2071 (2024) (No. 23-124), 2023 WL 7042630, at *18–21.

24.     This is consonant with the decisions of every court of appeals to consider the question, all of which held that section 307 grants the U.S. Trustees standing to appeal regardless of the government's financial interest. *See, e.g.*, as non-exhaustive examples:

- *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 162 (2d Cir. 2010) ("We . . . conclude that the U.S. Trustee's responsibility to represent and protect the public interest affords it a substantial interest in, and therefore standing to proceed with, this appeal.");

- *Stanley v. McCormick, Barstow, Sheppard, Wayte & Carruth (In re Donovan Corp.)*, 215 F.3d 929, 930 (9th Cir. 2000) ("The United States trustee may also intervene and appear at any level of the proceedings from the bankruptcy court on, . . . as either a party or an amicus.");

- *U.S. Tr. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 33 F.3d 294, 299 (3d Cir. 1994) ("In light of the plain language of section 307, general policies of public interest standing, and the overwhelming weight of the case law, we hold that the U.S. Trustee has standing in this case.");

- *U.S. Tr. v. Clark (In re Clark)*, 927 F.2d 793, 796 (4th Cir. 1991) (noting that "standing to appeal under the Bankruptcy Act as a 'party aggrieved' may arise from

a party's official duty to enforce the bankruptcy law in the public interest" and holding that U.S. Trustee has standing to appeal);

- *In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 824 (1st Cir. 1990) (holding that standing derives from the U.S. Trustee's "statutory responsibility to represent and protect the public");

- *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499–500 (6th Cir. 1990) (holding that U.S. Trustee had "standing to appeal" because Congress made him "responsible for 'protecting the public interest and ensuring that bankruptcy cases are conducted according to law'") (quoting H.R. Rep. No. 95-595 at 109, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6070).

25.     The Fifth Circuit similarly recognizes the right of a governmental agency to pursue the public interest because of a "supervisory and regulatory interest in enforcing the safeguards mandated by" federal statute.  *United States v. F.D.I.C.*, 881 F.2d 207, 209 (5th Cir. 1989) (holding that OCC's "obligation to ensure the safety and soundness of the national banking system for the benefit of depositors and the general public . . . provides sufficient standing for the United States"); *see also United States v. LeMay*, 322 F.2d 100, 103 (5th Cir. 1963) (recognizing standing of the Federal Housing Administration and holding that "Congress, obviously, did not inten[d] to bestow these specified powers upon the agency created by it and at the same time leave the agency and its Commissioner powerless to carry out their functions.").

26.     Moreover, the Fifth Circuit cited with approval *In re Clark*, 927 F.2d at 796, and other above-referenced cases regarding section 307 when it upheld the standing of a case trustee, which was not dependent "on a pecuniary interest" but rather the duty to ensure that "only proper payments are made from the bankruptcy estate."  *Edwards Fam. P'ship v. Johnson (In re Cmty. Home Fin. Servs., Inc.)*, 990 F.3d 422, 426–27 (5th Cir. 2021).

27.     It is thus unlikely that the Fifth Circuit would depart from the unanimous weight of authority on the U.S. Trustee's standing.

**B.    The U.S. Trustee has standing to seek disgorgement.**

    **1.    The U.S. Trustee's statutory standing under section 307 is broad and authorizes him to pursue this motion, including to recover attorney compensation.**

28.    As a matter of plain text, the U.S. Trustee's section 307 authority allows him to seek disgorgement and other sanctions for Jackson Walker's violation of its disclosure obligations. Section 307 expressly authorizes the U.S. Trustee to "raise" and "be heard" on "any issue" except that he "may not file a plan."  11 U.S.C. § 307.  As observed by the Third Circuit, "[i]t is difficult to conceive of a statute that more clearly signifies Congress's intent to confer standing."  *In re Columbia Gas*, 33 F.3d at 299.

29.    While in no way limited to the following provisions, the right to "raise" and "be heard" on "any issue" includes, among many other things, the right to seek:

- vacatur of employment orders under section 327 and compensation orders under section 330;

- a denial of compensation for lack of disinterestedness under section 328(c);

- a reduction of compensation under 330(a)(2) if the requested compensation is not reasonable;

- monetary and non-monetary sanctions for bankruptcy professionals' misconduct; and

- the recovery of fees under Bankruptcy Rule 2017.

*See Black's Law Dictionary* 1318, 1510 (11th ed. 2019) (defining "raise" as "[t]o bring up for discussion or consideration" and "opportunity to be heard" as including "[t]he chance to appear in a court or other tribunal and present evidence and argument").  When a statute's language is plain, "'the sole function of the courts is to enforce it according to its terms.'"  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (citation omitted).

30.     The *only* action the U.S. Trustee is not authorized to take under section 307 is to file a chapter 11 plan under section 1121(c).  11 U.S.C. § 307.  That is important.  "Where Congress explicitly enumerates certain exceptions . . . , additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 552 n.35 (5th Cir. 2016) (ellipses in original) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980)).  Because the U.S. Trustee is not seeking to file a chapter 11 plan, he has statutory authority to proceed on his motion.

31.     The broad scope of section 307 is further buttressed by legislative history.  The House Report accompanying the statute that expanded the U.S. Trustee pilot program nationwide provides:

> The U.S. Trustee is *given standing* to raise, appear, and be heard on any issue in any case or proceeding under title 11, U.S. Code—except that the U.S. Trustee may not file a plan in a chapter 11 case.  In this manner, the U.S. Trustee is given the same right to be heard as a party in interest, *but retains the discretion to decide when a matter of concern to the proper administration of the bankruptcy laws should be raised.*

H.R. Rep. No. 99-764 at 27, *reprinted in* 1986 U.S.C.C.A.N. 5227, 5240 (emphasis added); *see also In re Columbia Gas*, 33 F.3d at 296 (citing aforementioned passage from House Report in holding that U.S. Trustee's standing is not limited to the specific duties listed in 28 U.S.C. § 586).[2]  Notably, Congress itself granted the Attorney General discretion to prescribe other "duties

---

[2] As other courts have recognized, the enumeration of the U.S. Trustee's duties under 28 U.S.C. § 586 and other provisions of the Bankruptcy Code "are illustrative and not exhaustive, and . . . the UST is authorized to perform duties not specifically mentioned by the Bankruptcy Code." *Walton v. Countrywide Home Loans, Inc.*, No. 08-23337, 2009 WL 1905035, at *4 (S.D. Fla. June 9, 2009) (holding U.S. Trustee had standing to initiate adversary proceeding against creditor for sanctions).  *See also Hayes & Son Body Shop, Inc. v. Childress (In re Hayes & Son Body Shop, Inc.)*, No. 91-5634, 1992 WL 56754, *3 (6th Cir. Mar. 23, 1992) (rejecting argument that section 586 limited U.S. Trustee's authority under section 307) (citing *In re Revco*, 898 F.2d at 498, as controlling).

consistent with title 11 and [title 28]" to the U.S. Trustee.  28 U.S.C. § 586(a)(5).  Thus, even if the specific duties that Congress enumerated for the U.S. Trustee did *not* include the monitoring of professionals' employment and their compensation, the U.S. Trustee would have had standing to act here to uphold the integrity of the bankruptcy system.

32.     But, in fact, policing bankruptcy professionals' employment and compensation are among the specific duties set out for the U.S. Trustee.  28 U.S.C. § 586(a)(3)(A), (I).  This is because, in adopting the U.S. Trustee pilot program, Congress cited the fact that the "vacuum created by the lack of creditor interest in the case" had led to "attorney control," such that bankruptcy practice had begun to "work to the detriment of both debtors and creditors" and "benefit only those administering bankruptcy cases."  H.R. Rep. No. 95-595 at 92, *reprinted in* 1978 U.S.C.C.A.N. at 6053.  The U.S. Trustee was to "fill the vacuum of lack of creditor participation, where necessary to assure fair and efficient administration."  H.R. Rep. No. 95-595 at 100, *reprinted in* 1978 U.S.C.C.A.N. at 6061.

33.     Moreover, the U.S. Trustee's role in monitoring fees, including seeking the return of fees, was specifically discussed in testimony and materials before Congress in support of the then-pending proposal to add a provision that expressly granted the U.S. Trustee standing.  For example, a 1985 report commissioned by the Department of Justice explained: "At the most basic level, the U.S. trustee program helps preserve the integrity of the bankruptcy system by monitoring the fees charged by debtors' attorneys, trustees, and other professionals and by preventing fraud and abuse by debtors in possession."  *The United States Trustee System*, *Hearing on S-1961 before the Subcomm. on Cts of the Comm. on the Judiciary*, 99th Cong. 307 (1986) ("An Evaluation of the U.S. Trustee Pilot Program for Bankruptcy Administration: 1985 Update," a report sponsored by the U.S. Dept. of Justice, August 1985), *available at* 1986 WL 780448, *215.  The report then

cited certain respondents' perceptions regarding the U.S. Trustee's "important oversight function," including the comment from a judge in a U.S. Trustee pilot district that "[t]he court cannot police debtors' attorneys, but the U.S. trustee does.  They work it out or *file a motion to recover excessive fees*."  *Id.* (emphasis added).

34.     Additionally, an attorney speaking before the Judiciary Committee of the House of Representatives stated that he had practiced in both U.S. Trustee pilot districts and non-pilot districts, and that "the strengths of the pilot project have been demonstrated," among other areas, in the "efforts to review attorneys['] fees and bring to the attention of the bankruptcy court those cases involving overreaching and the failure of counsel to perform legal services in a competent manner *and to have fees refunded*."  *The United States Trustees Act of 1985, Hearings on H.R. 2660 and H.R. 3664 before the Subcomm. on Monopolies and Commercial Law of the Comm. on the Judiciary*, 99th Cong. 96-98 (1985 & 1986) (statement of Irving H. Picard, Esq., Moses & Singer), *available at* 1985 WL 709781, *52 (emphasis added).

35.     Oversight of attorney conduct to ensure fairer and more efficient administration is part of the U.S. Trustee's mandate from Congress.  Jackson Walker's contention that section 307 doesn't allow the U.S. Trustee to seek disgorgement cannot be squared with the statute's plain language or legislative history.

> **2.     The U.S. Trustee has standing to seek sanctions for Jackson Walker's violation of its disclosure duties.**

36.     Tellingly, in over 100 pages of briefing in response to the U.S. Trustee's 60(b) motion, Jackson Walker failed to cite a single case holding that the U.S. Trustee lacked standing to seek disgorgement based on disclosure violations.

37.     As "watchdogs prevent[ing] fraud, dishonesty, and overreaching in the bankruptcy arena," the U.S. Trustee has a "responsibility to prevent abuse of the bankruptcy process and to

facilitate administration of [the debtor's] case." *A-1 Trash Pickup, Inc. v. U.S. Tr. (In re A-1 Trash Pickup, Inc.)*, 802 F.2d 774, 775, 777 (4th Cir. 1986) (holding U.S. Trustee may move to dismiss where debtor "was abusing the bankruptcy process and acting in bad faith for its own benefit"). Much like the Fifth Circuit observed in a different context, it is inconceivable that Congress provided the U.S. Trustee with a watchdog mandate yet left him "powerless" to carry out his function. *LeMay*, 322 F.2d at 103.

38.     To that end, the U.S. Trustee has standing to seek sanctions for attorney misconduct, including disgorgement for Jackson Walker's failure to disclose the romantic relationship between one of its partners and Judge Jones.  Unsurprisingly, courts routinely grant motions by the U.S. Trustee seeking disgorgement against attorneys as a sanction and courts of appeals affirm these orders. *E.g.*, *Arens v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003–04 (5th Cir. 1995); *Lloyd Ward & Assocs. v. U.S. Tr. (In re Network Cancer Care, L.P.)*, 197 F. App'x 284, 284 (5th Cir. 2006); *W.F. Dev. Corp. v. Off. of U.S. Tr. (In re W.F. Dev. Corp.)*, 905 F.2d 883 (5th Cir. 1990); *Dordevic v. Layng (In re Dordevic)*, 62 F.4th 340 (7th Cir. 2023); *Rubin & Rubin P.A. v. Wells Fargo Bank, NA (In re NNN 400 Capitol Ctr. 16 LLC.)*, No. 21-3013, 2022 WL 17831445 (3d Cir. Dec. 21, 2022); *In re 38-36 Greenville Ave LLC*, No. 21-2164, 2022 WL 1153123 (3d Cir. Apr. 19, 2022)*, cert. denied sub nom. Kevin Kerveng Tung, P.C. v. Forman*, 143 S. Ct. 118 (2022); *Kohout v. U.S. Tr.*, 610 F. App'x 244 (4th Cir. 2015); *Kun v. Mansdorf*, 558 F. App'x 755, 756 (9th Cir. 2014); *Bisges v. Gargula (In re Clink)*, 770 F.3d 719, 721 (8th Cir. 2014); *Lawrence v. U.S. Tr. (In re Windman)*, 442 F. App'x 359 (9th Cir. 2011); *Orlyn v. U.S. Tr. (In re Takeuchi)*, 295 F. App'x 202 (9th Cir. 2008); *United States v. Schilling (In re Big Rivers Elec. Corp.)*, 355 F.3d 415, 422 (6th Cir. 2004); *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714 (6th Cir. 2001), *opinion clarified sub nom. Henderson v. Kisseberth*, 24 F. App'x 539 (6th Cir. 2002); *Miller v. U.S. Tr. (In*

13

*re Indep. Eng'g Co.)*, 197 F.3d 13 (1st Cir. 1999); *Law Offs. of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040 (9th Cir. 1997); *Jensen v. U.S. Tr. (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844 (B.A.P. 10th Cir. 1997); *cf. Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*, 44 F.3d 1310, 1312 (6th Cir. 1995) (on U.S. Trustee's appeal, reversing bankruptcy court orders that approved the employment and fees for conflicted financial advisor and ordering partial disgorgement).

39.     The U.S. Trustee's standing to seek sanctions for attorneys' failures to disclose conflicts of interests is further supported by the importance and need to police the disinterestedness requirement.  As explained by the First Circuit, "sections 327(a) and 328(c) cannot achieve their purpose unless court-appointed counsel police themselves in the first instance."  *Rome v. Braunstein*, 19 F.3d 54, 59 (1st Cir. 1994).  *See also Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.)*, 785 F.2d 1249, 1255 (5th Cir. 1986) ("Vigilance is required by and among court-appointed counsel in particular to enforce the standards of the Code.").  "[B]ecause the bankruptcy court does not possess the resources to independently investigate an applicant's conflicts of interest, full and candid disclosure is required to enable the court to determine whether the applicant meets the 'disinterested' standards of § 327(a)."  *In re Benjamin's-Arnolds, Inc.*, No. 4-90-6127, 1997 WL 86463, at *9 (Bankr. D. Minn. Feb. 28, 1997).  And it is in part because it is "difficult if not impossible" to police the required disclosures in a cost-effective manner that the penalties for dishonesty are severe.  *SE Prop. Holdings, LLC v. Stewart (In re Stewart)*, 970 F.3d 1255, 1265 (10th Cir. 2020) (quoting *In re Lewis*, 309 B.R. 597, 602–03 (Bankr. N.D. Okla. 2004)).

### 3.     Nothing precludes the U.S. Trustee from seeking relief under 11 U.S.C. § 105(a)

40.     The U.S. Trustee sought sanctions here in part under 11 U.S.C. § 105(a).  *See* 60(b) Mot. at ¶ 196 (quoting *Ridgeway v. Stryker Corp. (In re Ridgeway)*, 973 F.3d 421, 428 (5th Cir.

2020) ("[Section 105(a)] includes the power to sanction a party.")); *see also Suffness v. Petros (In re Avante Real Estate, Inc.),* No. 95-10442, 1995 WL 625456, *8 (5th Cir. Oct. 11, 1995) (affirming disgorgement order entered under section 105(a)) (cited in *Baker v. Cage (In re Whitley)*, 737 F.3d 980, 987 (5th Cir. 2013)).

41.     An action to enforce the Code's disinterestedness and disclosure requirements under the Bankruptcy Code derives in part from a bankruptcy court's equitable power to "issue any order . . . that is necessary or appropriate to carry out" a provision of the Code.  11 U.S.C. § 105(a).  *See, e.g.*, *38-36 Greenville Ave*, 2022 WL 1153123, at *4 (stating that "[v]iolations [of the Code's disclosure requirements] are . . . appropriately policed through equitable remedies fashioned by the Bankruptcy Court") (internal quotation marks and citations omitted); *Houston v. Welt (In re Herman)*, 632 F. App'x 580, 582 (11th Cir. 2015) (acknowledging bankruptcy court's authority under section 105 to impose sanction for disclosure violation); *Fairshter v. Stinky Love, Inc. (In re Lacy)*, No. 07-1424, 2008 WL 5351732, at *6, 8 (10th Cir. Dec. 23, 2008) (affirming disgorgement order issued pursuant to bankruptcy court's equitable powers under section 105(a)).

42.     Section 105(a) authorizes a bankruptcy court to order an equitable remedy that "is demonstrably necessary to preserve a right elsewhere provided in the Code"—here, the disinterestedness required by section 327(a) and the disclosures requirements under the Rules to identify any conflicts of interest—"so long as the court acts consistent with the Code and does not alter the Code's distribution of other substantive rights." *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000), *amended on denial of reh'g* (Dec. 15, 2000) (internal quotation marks and citations omitted).  And there is nothing in section 105(a) that precludes the U.S. Trustee from obtaining relief under that provision.  This is not "[a] situation in which a statute authorizes specific action and designates a particular party empowered to take it," from which this Court should

presume exclusivity. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 2 (2000). Consequently, the U.S. Trustee has standing to seek disgorgement as a sanction under 11 U.S.C. § 105(a).

>    **4.    The U.S. Trustee has authority under Bankruptcy Rule 2017(b) to ask this Court to review Jackson Walker's fees.**

43.    Bankruptcy Rule 2017(b) expressly identifies the U.S. Trustee as a party who may move this Court to review the fees paid to Jackson Walker to determine if they are "excessive."

44.    As explained in the advisory committee notes to Bankruptcy Rule 2017, "[t]he United States [T]rustee supervises and monitors the administration of bankruptcy cases other than chapter 9 cases and pursuant to § 307 of the Code may raise, appear and be heard on issues relating to fees paid to the debtor's attorney." Fed. R. Bankr. P. 2017 advisory comm. notes (1991 amendment). Bankruptcy Rule 2017 thus directly contemplates the involvement of U.S. Trustees in monitoring attorney compensation. There is no requirement that the attorney's client participate in this process.

45.    Section 330 provides only for "reasonable" compensation. 11 U.S.C. § 330. And "reasonable" compensation "'necessarily implies loyal and disinterested service in the interest of those for whom the claimant purported to act.'" *In re Big Rivers Elec. Corp.*, 355 F.3d at 436 (quoting *Wolf v. Weinstein*, 372 U.S. 633, 642 (1963)); *see also Woods v. City Nat. Bank & Tr. Co. of Chi.*, 312 U.S. 262, 268 (1941) ("Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation."); *In re Southmark Corp.,* 181 B.R. 291, 295 (Bankr. N.D. Tex. 1995) ("Compensation should not be allowed for services rendered by a professional person who holds conflicting interests even if no fraud or unfairness resulted from the conflict"). If Jackson Walker were conflicted, then the compensation it received would not have been reasonable. And under the Bankruptcy Rules, the U.S. Trustee can raise this issue.

16

C. **The U.S. Trustee has standing to act alone.**

   1. **The U.S. Trustee's standing does not turn on whether other parties may— or may not—choose to participate.**

46.     There is no requirement under any applicable statute or rule that other parties must participate for the U.S. Trustee to exercise his statutory authority to hold Jackson Walker accountable for its misdeeds.  Parties might decline to participate for myriad reasons such as the cost of litigating.  It was reasonable for others who might benefit from the returned fees to rely on the U.S. Trustee's prosecution of the reconsideration and sanctions motion.  That is why the U.S. Trustee was created as a "watchdog"—to fill the "vacuum" where no one else acted.  H.R. Rep. No. 95-595 at 100, *reprinted in* 1978 U.S.C.C.A.N. at 6061.

47.     On this point, the Ninth Circuit's decision in *In re Donovan Corp.*, 215 F.3d 929, is instructive.  There, the U.S. Trustee had sought disgorgement of counsel's fees and appealed the bankruptcy court's denial of that request.  The district court dismissed the U.S. Trustee's appeal for a lack of standing because under its theory, "the creditors who might arguably be benefitted by the disgorgement had expressed no interest" in pursuing the relief.  *Id.* at 929.  The Ninth Circuit reversed.  Relying on the text of section 307, the court of appeals held that because the case was a proceeding under title 11, the U.S. Trustee had standing.  *Id.* at 930.  The same rings true here.

48.     Notably, Jackson Walker acknowledged that the U.S. Trustee has standing to seek vacatur of the orders approving its retention and compensation.  *See* Sept. 16th Tr. at 17:1-2.  The U.S. Trustee's motion seeks to vacate the compensation order based on the information revealed after the order was entered—information that would have resulted in the denial of fees and disgorgement of fees already paid.  *See infra*, section I(D)(2).  The U.S. Trustee has standing to

object to its retention and compensation—as Jackson Walker concedes[3]—and does so regardless of whether others also object to the same applications.  The U.S. Trustee also has standing to appeal an order approving retention and compensation regardless of whether others objected or appealed.  *See In re Pillowtex, Inc.*, 304 F.3d 246, 250 (3d Cir. 2002) (rejecting argument that U.S. Trustee lacked standing because no other parties in interest objected to retention of counsel and citing section 307 for U.S. Trustee's standing to pursue appeal of order approving employment).  There is no basis for treating the U.S. Trustee's standing to object and seek disgorgement any differently in this context.  Jackson Walker has provided none.

49.     To the extent Jackson Walker or this Court has concerns that there may be no party to accept the funds, this concern is both unsupported and premature.  As an initial matter, there does not appear to be any dispute here that there is a party available to accept any disgorged funds.  Under the terms of *Altera's* confirmed plan, any disgorged fees would belong to the reorganized debtor.  Counsel for Altera did not state that it would refuse acceptance.  *See* Sept. 16th Tr. at 8:25–9:4.  Further, as held by the Ninth Circuit, even if the party who could receive the funds would prefer not to receive them, this does not moot a disgorgement order.  *In re Windman*, 442 F. App'x at 360.  In any event, it is unnecessary at this juncture for this Court to resolve the issue of where any disgorged funds would go.  There is no threshold requirement to set out specific logistical steps necessary to enforce a remedy to establish justiciability.  Potential difficulties in enforcement of an order do not deprive a court of jurisdiction.  *Chafin v. Chafin*, 568 U.S. 165, 175–76 (2013).

---

[3] *See Jackson Walker LLP's Response in Opposition to The United States Trustee's Motion For (1) Relief From Judgment Pursuant To Federal Rule Of Civil Procedure 60(b)(6) And Federal Rule Of Bankruptcy Procedure 9024 Approving The Compensation Applications Of Jackson Walker LLP, (2) Sanctions, And (3) Related Relief* ("JW Opp.") at ¶ 80.

> **2. The U.S. Trustee is not pursuing an estate cause of action when he fulfills his "watchdog" role by holding wrongdoers accountable for their misconduct.**

50.     Jackson Walker contends that the U.S. Trustee is attempting to assert a claim that only the estate has standing to raise.  JW Opp. at ¶¶ 80–89.  But it has cited no case holding that the U.S. Trustee could not seek disgorgement of an attorney's fee award under 11 U.S.C. § 330 based on the false equivalence of such an action with an estate claim.

51.     And although Judge Isgur directed the parties to brief the issue of whether the U.S. Trustee has standing to seek a recovery for a third-party, Sept. 16th Tr. at 11:20–12:8, he likewise cited no example where a court has ever held that a U.S. Trustee is impermissibly representing a third-party when seeking a return of fees from professionals who violated their disclosure or other professional obligations.

52.     Both fundamentally misapprehend what the U.S. Trustee is doing here.

53.     It is not uncommon for Congress to enact statutes that allow the government to take civil legal action to vindicate federal law for the benefit of individuals.  This can be seen in the context of, for example, Congress's authorization of the Secretary of Labor to recover minimum wage and overtime obligations on behalf of individual employees under the Fair Labor Act, 29 U.S.C.A. § 216, or Congress's authorization of the Equal Employment Opportunity Commission to seek victim-specific judicial relief for violations of various federal laws prohibiting discriminatory labor practices, 42 U.S.C. § 2000e-5.

54.     In that context, the Supreme Court expressly recognized "the difference between the EEOC's enforcement role and an individual employee's private cause of action."  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 287 (2002).  It continued to recognize that difference even after "Congress expanded the remedies available in EEOC enforcement actions . . . to include compensatory and punitive damages."  *Id*. at 288.  The Supreme Court rejected the notion that the

EEOC could only prosecute its claim with the individual victim's consent, or that its prayer for relief could be dictated by the victim. *Id.* at 291. Instead, the agency had "the authority to evaluate the strength of the public interest at stake," and "determine whether public resources should be committed to the recovery of victim-specific relief." *Id.* at 291–92.

55. The Fifth Circuit similarly recognizes the "authority of the United States to bring suit . . . for the benefit of the public generally and for [an individual's] benefit specifically." *United States v. Miss. Dep't of Pub. Safety*, 321 F.3d 495, 499 (5th Cir. 2003). As the Fifth Circuit has explained, the government has its own "real and substantial interest" in pursuing a claim to vindicate federal law. *Id.* And even if that action results in "victim-specific relief," this does not "transform the United States into a mere proxy" for that individual. *Id.*

56. For that reason, the Supreme Court and Fifth Circuit have both recognized the right for the United States to proceed in actions that may result in victim-specific relief, even if the victims themselves could not pursue such an action. *See Waffle House*, 534 U.S. at 297 (holding the fact that employee signed mandatory arbitration agreement does not limit remedies available to EEOC or bar its suit); *Miss. Dept. of Public Safety*, 321 F.3d at 499 (holding that Eleventh Amendment is not a bar to the United States' suit against a state, even though it would bar suit by individual benefiting from such action); *E.E.O.C. v. Bd. of Supervisors for Univ. of La. Sys.*, 559 F.3d 270, 272–74 (5th Cir. 2009) (holding same).

57. Here, the U.S. Trustee is not acting as a proxy for the estate in bringing his motion. Rather, he is representing the public interest of the United States in vindicating federal bankruptcy law and ensuring that bankruptcy professionals like Jackson Walker do not profit by failing to disclose disqualifying conflicts of interest. The parties entitled to receive the disgorged funds cannot represent this interest. To the contrary, vindicating "the public interest (including the public

20

interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive." *All. for Hippocratic Med.*, 602 U.S. at 382.

58.     Because the U.S. Trustee is statutorily authorized to raise any issue, other than to propose a plan, 11 U.S.C. § 307, and is moving to uphold the Bankruptcy Code's requirements of disinterestedness, his authority to act is not dictated by the choice of others. *Cf. Waffle House*, 534 U.S. at 291–92 (holding "the statute [granting enforcement powers to the EEOC] clearly makes the EEOC the master of its own case"). To that end, any contention that the estate's release and exculpation of Jackson Walker somehow bars the U.S. Trustee's motion is misguided. JW Opp. at ¶¶ 90–92. Even if the release and exculpation clauses did apply to Jackson Walker's actions— which for all the reasons explained in the U.S. Trustee's reply, ECF No. 115 ("Reply") at section II(G)(2), they do not—such a defense would not prohibit the government's authority to act here. *Waffle House*, 534 U.S. at 297; *Miss. Dept. of Pub. Safety*, 321 F.3d at 499; *Bd. of Supervisors for Univ. of La. Sys.*, 559 F.3d at 272–74. And because the U.S. Trustee does not seek to modify the plan or confirmation order, contrary to Jackson Walker's contentions, 11 U.S.C. § 1144 is not implicated.[4] *See* Reply at section II(G)(2)(e).

>     **D.     Jackson Walker's standing argument does not impact the other relief sought by the U.S. Trustee.**
>
>>     **1.     The U.S. Trustee has standing to seek other appropriate relief, as he requested in his motion.**

59.     Even if disgorgement is not ordered, there are other affirmative remedies available here because the U.S. Trustee asked for other relief in addition to disgorgement. 60(b) Mot. at 51

---

[4] Notably, the plan and confirmation order both provide that the Reorganized Debtors "shall pay Professional Claims in Cash in the amount the [Bankruptcy] Court allows." Order, ECF No. 533 at 61; Plan, ECF No. 516 at 22. Ordering Jackson Walker to give back fees whose allowance is vacated is thus not a collateral attack on the plan or confirmation order.

(requesting that the Court "grant such other and further relief as this Court deems just and appropriate."); *see also* 60(b) Mot. at ¶ 202 (arguing that "[t]he bankruptcy court has authority to impose disciplinary sanctions on attorneys beyond the return of compensation") (quoting *In re Whitley*, 737 F.3d at 988).

60.     Depending on the evidence that the U.S. Trustee uncovers, this Court is not limited in imposing appropriate non-monetary sanctions or monetary sanctions payable to the U.S. Trustee, all of which fall within the scope of the "such other relief" requested in the 60b Mot. These might include:

- admonishment of Jackson Walker and/or one or more Jackson Walker attorneys;

- suspension of the ability of one or more Jackson Walker attorneys to practice before this Court;

- completion of continuing legal education in ethics by one or more Jackson Walker attorneys;

- requirement that one or more Jackson Walker attorneys report this Court's judgment to (1) their clients, (2) parties and the court in other bankruptcy cases in this district in which it seeks retention or compensation as an estate professional, and (3) the state bar;

- supplemental referrals for disciplinary proceedings under Local Rule 6 of one or more Jackson Walker attorneys;

- injunction requiring Jackson Walker to develop, obtain court-approval, and implement in cases before this Court, comprehensive and effective procedures for identifying and reporting conflicts of interest;

- fines; and

- attorney's fees.

61.     Jackson Walker has asserted a standing argument only as to disgorgement. Consequently, even if—contrary to all existing caselaw—this Court were to hold that the U.S.

Trustee lacks standing to seek disgorgement, that would not resolve the U.S. Trustee's request for other relief.

> **2.    As Jackson Walker concedes, the U.S. Trustee has standing to seek vacatur of compensation orders, and consequently, it must return any unearned fees if the Court vacates that order.**

62.    Jackson Walker has acknowledged that the U.S. Trustee has standing to seek vacatur of employment and compensation orders.  See Sept. 16th Tr. at 17:1–2.

63.    This concession is not surprising.  Jackson Walker had a duty to disclose any disqualifying interests so that the U.S. Trustee could evaluate the firm's employment and compensation.  *See* Fed. R. Bankr. P. 2014(a) (requiring applicant to provide copy of employment application to U.S. Trustee).  Jackson Walker had a duty to disclose facts relevant to its retention under section 327, which precludes retention of counsel who are not disinterested or who hold adverse interests to the estate.  11 U.S.C. § 327.  And under Rule 2014(a), Jackson Walker's employment application was to "state the specific facts showing the necessity of employment," including a verified statement of "connections" with "any other party in interest."  Fed. R. Bankr. P. 2014(a).  Had the U.S. Trustee been aware of Jackson Walker's disqualifying lack of disinterestedness, he would have objected to its continued employment under 11 U.S.C. § 327.  *See* 60(b) Mot. at section I(B).

64.    Because Jackson Walker failed to disclose information that would have prompted the U.S. Trustee to object to its continued employment and compensation, he seeks vacatur of the compensation order under Rule 60(b)(6) of the Federal Rules of Civil Procedure.  *See, e.g.*, *In re eToys, Inc.*, 331 B.R. 176, 188 (Bankr. D. Del. 2005) (holding failure to disclose conflicts or connections "implicates a public policy interest justifying relief . . . under Rule 60(b)(6)") (quoting *In re Southmark Corp.,* 181 B.R. at 295).

65.     The compensation order should be vacated and the amount of compensation allowed reduced under 11 U.S.C. § 328(c) and 11 U.S.C. § 330(a)(2).  The latter expressly provides that "on the motion of the United States Trustee" the court may "award compensation that is less than the amount of compensation that is requested."  And less compensation would be warranted in light of Jackson Walker's lack of disinterestedness such that this Court could "deny allowance" under section 328(c).  *See In re Consol. Bancshares, Inc.*, 785 F.2d at 1256.

66.     There are multiple alternative grounds on which a court may order disgorgement of an attorney's fees such as by ordering a return of fees under 11 U.S.C. § 329, under its broad discretion over attorney compensation under 11 U.S.C. § 330, or as a sanction—and courts routinely do.  *See, e.g.*, *In re Prudhomme*, 43 F.3d at 1002–04.  But even if this Court does not require disgorgement after vacating the compensation order and reducing or denying Jackson Walker fees under 11 U.S.C. § 330(a)(2), Jackson Walker would be ethically obligated to return any unearned fees to a person or entity with the legal right to the funds.

67.     Rule 1.14(b) of the Texas Disciplinary Rules of Professional Conduct provides in relevant part:

> Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

TEX. RULES OF PROF'L CONDUCT 1.14(d) (Jan. 31, 2022).

68.     Consequently, if the U.S. Trustee succeeds in his motion for vacatur of the compensation order and this Court denies fees in full or allows fees in a reduced amount, then Jackson Walker has a professional duty to return the unawarded fees.  This duty is independent of any request from another party or any order of this Court.  If Jackson Walker does not have a legal right to the property, it "shall promptly deliver" that property to the person or entity to whom it

belongs.  *Id*.  Should that person (inexplicably) not wish to accept it, then under the disciplinary rules it may be permissible for Jackson Walker to keep the proceeds.  But such a consequence would only follow *after* vacatur, which is the U.S. Trustee's undisputed right to seek.

69.     This conclusion also adheres to the analysis in *In re Prudhomme*, 43 F.3d at 1004.  There, the Fifth Circuit recognized a third alternative ground on which to affirm the bankruptcy court's disgorgement order.  *Id*. at 1004.  The Fifth Circuit noted that under state law, any unearned portion of an attorney's retainer remained the property of the client and must be held in trust.  *Id*.  It then observed that "[a]ttorneys must prove their entitlement to compensation before the bankruptcy court will order a fee award."  *Id*.  And where the "entire retainer was unearned and [the attorney] did not prove entitlement to be paid therefrom," the attorney had to disgorge those funds.  *Id*.

### E.      It would be detrimental to the bankruptcy system to deny the U.S. Trustee his statutory authority to hold wrongdoers accountable.

70.     Jackson Walker suggests that the U.S. Trustee lacks standing to seek a return of fees because the money would not be returned to the government.  JW Opp. ¶ 85.  This is illogical and contradicts the broad standing of the U.S. Trustee to take actions under section 307 to vindicate the Bankruptcy Code and Rules.  But if this Court accepts such a dubious proposition, it would negatively impact the bankruptcy system.

71.     The U.S. Trustee plays an integral role in protecting the integrity of the bankruptcy system.  Policing professionals' conflicts and excessive fees across multiple chapters of the Code are among his core duties.  Over fiscal years 2022 to 2023, the Program undertook 3,809 objections and inquiries related to the employment of professionals, including those with conflicts of interest.  *See* U.S. Dept. of Justice, U.S. Trustee Program Annual Report, Fiscal Years 2022 and 2023, at 16, *available at* https://www.justice.gov/ust/media/1348371/dl.  Over the same period, the Program

filed 899 actions across the country seeking the return of fees or other relief against attorneys who violated the Bankruptcy Code and Rules. *Id.* at 24.

72.     Indeed, this Court has routinely granted motions brought by the U.S. Trustee seeking disgorgement and sanctions in no fewer than 11 cases over the past four years: *In re Lantz*, No. 23-30473 (Bankr. S.D. Tex. June 2, 2023); *In re Edjeren*, No. 22-31048 (Bankr. S.D. Tex. Dec. 14, 2022); *In re Preferred Ready-Mix LLC*, No. 21-33369 (Bankr. S.D. Tex. Jan 12, 2022); *In re Anwukah*, No. 21-30294 (Bankr. S.D. Tex. Apr. 20, 2021); *In re Cruz*, No. 18-10208 (Bankr. S.D. Tex. Aug. 27, 2020); *In re Haston*, No. 19-20449 (Bankr. S.D. Tex. July 17, 2020); *In re Wells*, No. 20-20001 (Bankr. S.D. Tex. July 17, 2020); *In re Saenz*, No. 20-20010 (Bankr. S.D. Tex. July 17, 2020); *In re Walls*, No. 19-20628 (Bankr. S.D. Tex. July 17, 2020); *In re Bier*, No. 19-20503 (Bankr. S.D. Tex. Apr. 27, 2020); *In re Lira*, No. 19-70304 (Bankr. S.D. Tex. Jan. 22, 2020).

73.     Section 307 authorizes the U.S. Trustee to take these actions, as Congress intended. And often the U.S. Trustee acts alone.  If this Court concludes that the U.S. Trustee lacks standing to seek sanctions for attorney misconduct, debtors and creditors will be harmed and the limited resources of bankruptcy courts will be further burdened.

74.     This Court need not and should not take such a strained interpretation of section 307.  While the circumstances in which Jackson Walker violated their ethical duties might be unusual, there is nothing unusual about the U.S. Trustee's role in pursuing relief against attorneys for violating their disclosure requirements or seeking disgorgement when attorneys should not have been compensated.  Whether this Court believes disgorgement or any other sanction is warranted here should depend on the facts found at trial—not on a misguided denial of standing to the U.S. Trustee to perform one of his core duties.

II.    **The U.S. Trustee's standing is irrelevant to this Court's authority and jurisdiction to consider the motion.**

    A.    **This Court has independent authority to review attorney compensation and a duty to do so even in the absence of an objection.**

75.    As the U.S. Trustee previously explained, Reply at ¶¶135–38, Jackson Walker's attack on the U.S. Trustee's standing cannot protect Jackson Walker from sanctions for the additional reason that this Court already has both authority to reduce fees and order disgorgement *sua sponte*, and an independent duty to do so.

76.    Bankruptcy courts—unlike other federal courts—do not require the existence of an adversarial proceeding to take actions to ensure compliance with the Bankruptcy Code.  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010).  In *Espinosa*, the Supreme Court expressly rejected the notion that a party must object before a bankruptcy court can reject a plan as inconsistent with the Bankruptcy Code.  Rather, "the Code makes plain that bankruptcy courts have the authority—indeed, the *obligation*—to direct a debtor to conform his plan to the requirements" of the applicable statutory provisions.  *Id.* (emphasis added).

77.    The duty of a bankruptcy court to act *sua sponte* is particularly high when reviewing attorney compensation because of the possible conflicts of interest between the attorney and the estate.  *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 843 (3d Cir. 1994).  Indeed, the Fifth Circuit has previously decried the practice among bankruptcy professionals who, "sharing the mutual goal of securing approval for their fees, enter into a conspiracy of silence with regard to contesting each other's fee applications." *In re Consol. Bancshares, Inc.*, 785 F.2d at 1255.  Courts cannot rely solely upon the existence of an objection to fee applications to control against possible abuses of compensation.

78.    Unsurprisingly, courts have therefore rejected challenges to the standing of a party who objected to a fee application or sought disgorgement of fees paid—because the bankruptcy

27

court has an independent duty to consider such matters. *See In re Big Rivers Elec. Corp.*, 355 F.3d at 442; *accord Herrera v. Dishon*, No. 4:15-cv-227, 2016 WL 7337577, at *1 (S.D. Tex. Dec. 16, 2016) (rejecting standing challenge on appeal because of the "independent duty" of the bankruptcy court to review fee applications).

79.     The Sixth Circuit's holding in *In re Big Rivers Elec. Corp.* is particularly instructive.   There, the court of appeals affirmed an order directing the disgorgement of an examiner's fees after the examiner failed to disclose a conflict of interest.  355 F.3d at 422.  At the bankruptcy court's request, the district court withdrew the order of reference on the disgorgement issue and the matter was assigned to a district court judge in a separate state.  *Id.* at 427.  That judge, exercising original jurisdiction, ordered the examiner and his law firm to disgorge all compensation.  *Id*. at 428–29.  Despite recognizing that "the sanction in this case is a harsh and unforgiving one," *id.* at 437, the Sixth Circuit held that full disgorgement was an appropriate sanction.  *Id.* at 436.

80.     In holding this, it rejected as not "persuasive" the examiner's argument that the appellees, including the U.S. Trustee, either lacked standing or forfeited the disgorgement issue. *Id*. at 438, 442.  The Sixth Circuit further held that even if this "doubtful" proposition were true, "the district court would still have standing to raise the issue on it[s] own."  *Id.* (citing 11 U.S.C. § 105(a) and *Busy Beaver*, 19 F.3d at 841).

81.     Similarly, under Fifth Circuit precedent, courts exercising their "broad supervisory powers" over attorneys employed by the estate, *In re Consol. Bancshares, Inc.,* 785 F.2d at 1254, may order disgorgement and "deny *all* compensation to professionals who fail to make adequate disclosure." *Waldron v. Adams & Reese, L.L.P. (In re Am Int'l Refinery, Inc.)*, 676 F.3d 455, 465–66 (5th Cir. 2012) (affirming disgorgement of $135,000 as sanction for law firm's failure to

28

disclose connections); *Matter of Prudhomme*, 43 F.3d at 1003 ("the court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction to debtors' counsel for nondisclosure").

82.     As the U.S. Trustee previously explained, 60(b) Mot. at ¶¶ 105–29, Jackson Walker is not disinterested and should never have continued to be employed under 11 U.S.C. § 327(a). And "given Congress's directive, bankruptcy courts have an inescapable statutory duty to review fee arrangements." *In re Dordevic*, 62 F.4th at 343.  Having become aware of Jackson Walker's lack of disinterestedness and non-compliance with its disclosure obligations, this Court must perform that "inescapable statutory duty" here.

**B.    This Court also has the authority to police the conduct of attorneys who practice before it and the obligation to exercise that power here.**

83.     Separately, this Court also has an independent duty to discipline misconduct of the attorneys before it.  The Fifth Circuit has recognized the "broad authority" of this Court "to discipline attorneys and to award or disgorge fees paid in connection with bankruptcy proceedings." *In re Whitley*, 737 F.3d at 987 (quoting *In re Avante Real Estate,* No. 95–10442, 1995 WL 625456, at *8).  It similarly recognized this Court's "inherent power to guard the practice of attorneys who appear" before it. *Id*. (quoting *Suffness,* 1995 WL 625456 at *8).

84.     This Court thus has "inherent powers over lawyers who practice before it," which are not limited by the existence of disciplinary rules governing attorney misconduct.[5]  S.D. Tex. Local Rules, Appendix A, Rule 11 ("The existence of these rules does not limit the power of district judges to exercise their inherent powers over lawyers who practice before them . . . .").  This Court

---

[5] The district court's local rules apply in this Court.  *See* BLR 1001-1 ("In addition to these rules, the Local Rules of the District Court, the Administrative Procedures for CM/ECF, and the standing and general orders govern practice in the bankruptcy court.").

should exercise that authority to hold a trial on the merits.  Given the egregious circumstances here—where Jackson Walker and its partner, Ms. Freeman, participated in a mediation conducted by then-Judge Jones—with whom Ms. Freeman lived and co-owned property—without disclosing that relationship—this Court has an independent obligation to pursue this inquiry.

85.     Public confidence in the bankruptcy system must be restored and sunlight is the best disinfectant.  The truth about "who knew what and when?" must be ascertained.  It is not until the full truth is discovered that this Court can determine an appropriate remedy.

**C.     This Court also has collateral jurisdiction to consider matters like attorney misconduct and sanctions or to consider Rule 60(b) motions.**

86.     Regardless of anyone's standing, this Court has collateral jurisdiction to consider the U.S. Trustee's motion, because "a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990).

87.     Collateral jurisdiction "permits a federal court to consider issues collateral to the merits even where it lacks subject matter jurisdiction." *Ben E. Keith Co. v. Dining All., Inc.*, 80 F.4th 695, 699 (5th Cir. 2023) (affirming case-ending sanctions where court lacked diversity jurisdiction over case) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 137–38 (1992)).  "Common examples of 'collateral' issues include costs, attorney fees, sanctions, and contempt proceedings, as such proceedings do 'not signify a district court's assessment of the legal merits of the complaint.'" *Id.* (quoting *Cooter & Gell*, 496 U.S. at 396).

88.     Additionally, ancillary jurisdiction applies to Rule 60(b) motions brought after the federal court rendered the initial judgment, even if there is no longer diversity or federal question jurisdiction when the Rule 60(b) motion is filed.  *See West Virginia Oil & Gas Co. v. George E. Breece Lumber Co.*, 213 F.2d 702, 706–07 (5th Cir. 1954); *Crosby v. Mills*, 413 F.2d 1273, 1275–76 (10th Cir. 1969); *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 799 (7th Cir.

1980) ("It is clear that a Rule 60(b) motion is considered ancillary to or a continuation of the original suit; the motion thus requires no independent jurisdictional ground.").

89.     By contrast, the standing doctrine developed to ensure that there was Article III jurisdiction over a particular "case or controversy," given the limits of the jurisdiction of federal courts. *Lujan*, 504 U.S. at 560 ("the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III"); *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990) ("Article III. . . gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process.").

90.     Here, federal jurisdiction already exists. The Debtors invoked federal jurisdiction under 28 U.S.C. § 1334(a) when they filed their bankruptcy petitions at the outset of the bankruptcy case. Jackson Walker also invoked the court's jurisdiction when it sought retention and fees under the Bankruptcy Code. This Court thus now has continuing jurisdiction to consider the U.S. Trustee's Rule 60(b) motion and to sanction Jackson Walker for any misconduct in which it engaged during this bankruptcy case. There is no additional need to establish separate "standing" to invoke this Court's jurisdiction. This Court may, and should, consider these collateral issues of vacatur and sanctions.

## CONCLUSION

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court overrule Jackson Walker's objections and (1) vacate the orders granting Jackson Walker's interim and final fee applications, (2) hold Jackson Walker accountable for its wrongdoing by ordering it to return fees and expenses paid to it, and (3) grant the other relief the U.S. Trustee has identified elsewhere and in this brief.

Date: October 7, 2024

Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN AND WESTERN
DISTRICTS OF TEXAS

By: */s/ Alicia Barcomb*

RAMONA D. ELLIOTT
Deputy Director/
General Counsel
NAN ROBERTS EITEL
Associate General Counsel
Fed. ID No. 561266
DANIELLE PHAM
Trial Attorney
Department of Justice
Executive Office for
United States Trustees
Washington, D.C. 20530
(202) 307-1399 – Telephone

MILLIE APONTE SALL
Assistant U.S. Trustee
Tex. Bar No. 01278050/Fed. ID No. 11271
VIANEY GARZA
Trial Attorney
Tex. Bar No. 24083057/Fed. ID No. 1812278
ALICIA BARCOMB
Trial Attorney
Tex. Bar No. 24106276/Fed ID No. 3456397
515 Rusk, Suite 3516
Houston, Texas 77002
(713) 718-4650 – Telephone
(713) 718-4670 – Fax
Email: millie.sall@usdoj.gov
        vianey.garza@usdj.gov
        alicia.barcomb@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on October 7, 2024 a copy of the foregoing *Supplemental Brief in Support of His Amended and Supplemental Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* was served through ECF transmission.

By: */s/ Alicia Barcomb*
    Alicia Barcomb

32